# THE UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | |
|---|---|
| **Larry and Ann Marie Clutter,**<br>**Plaintiffs,**<br><br>vs.<br><br>**The United States of America**<br><br>**Defendant.** | CA 3:17-2119-JFA<br><br>**COMPLAINT** |

The Plaintiffs, by and through their undersigned counsel, complaining of the Defendant, hereby allege as follows:

## JURISDICTIONAL ALLEGATIONS

1. The Plaintiffs, Larry Clutter (hereinafter "Mr. Clutter") and his wife Marie Clutter (hereinafter "Mrs. Clutter"), bring this action against the United States of America (hereinafter "USA") for injuries and damages Mr. Clutter sustained from substandard medical care rendered to him by agents and/or employees of the USA.

2. Mrs. Clutter has a cause of action against the above Defendant for loss of consortium arising out of the injuries and damages suffered by her husband. At all times relevant to this Complaint, Plaintiffs were citizens and residents of Lee County, South Carolina. Mr. Clutter is a veteran of the United States Armed Services and thus was entitled to health care through the Veterans Administration.

3. This action is brought against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq* and 28 U.S.C. § 1346(b)(1) for money damages as compensation for the injury to Mr. Clutter, caused by the acts of employees,

servants, and agents of the United States Government, working at the Dorn Veterans Administration Medical Center (hereinafter "VA" or "VAMC"), located in Columbia, South Carolina.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because Plaintiffs resided within the Columbia Division of the United States District Court at all times relevant to this Complaint.

5. In addition, venue is proper in this Court in that all, or a substantial part, of the acts and/or omissions forming the basis of these claims occurred in the District of South Carolina, Columbia Division.

6. Plaintiffs have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims act by giving formal written notice to the USA through the filing of a Form 95 with the Department of Veteran Affairs on September 8, 2016.

7. The Department of Veteran Affairs has attempted settlement with Plaintiffs subsequent to the filing of the Form 95, but there has been no resolution of Plaintiffs' claim to date.

8. Six months has passed since the filing of the Form 95 and though there has been no official denial of Plaintiffs' claim, suit is being file since there has been no official denial or resolution of Plaintiffs' Form 95 claim.

9. An Affidavit from a qualified medical expert in regard to the actions or inactions of employees and/or agents of the USA has been contemporaneously filed with this Complaint (Attached hereto as Exhibit 1).

10. The Affidavit sets forth certain breaches of the standard of care by Defendant, their agents and/or employees. Neither the Affidavit, nor the allegations contained

herein, are an all-inclusive list of negligence which will be attributed to Defendant, their agents and/or employees. Additionally, the type(s) and or description(s) of damages to Plaintiffs described herein, are/is not an all-inclusive list of damages suffered by them.

11. Upon information and belief, Defendant USA has attending physicians, nurses and other staff who are its agents, servants, and employees, and all acts or omissions complained of herein, performed by said agents, servants, and employees occurred during the course and scope of such agency and/or employment and is imputed to Defendant USA.

12. The negligent acts, omissions, and liability of the Defendant includes its agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency and/or respondeat superior.

## FACTUAL ALLEGATIONS

13. This action concerns the substandard medical and nursing care provided to veteran Larry Clutter at the William Jennings Bryan Dorn VA Medical Center in Columbia, South Carolina by one Dr. Alan Koslow and other agents, servants, and employees of the VAMC.

14. On December 3, 2015, Mr. Clutter was admitted to the VAMC under the care of Dr. Koslow. Mr. Clutter underwent a femoral-popliteal bypass on December 3, 2015, by Dr. Koslow. As more fully discussed herein, Dr. Koslow should not have been practicing medicine anywhere, let alone performing a bypass surgery.

15. After the surgery, Mr. Clutter repeatedly and consistently reported high pain levels in his left leg. This pain was indicative of the graft having failed. Moreover, the nurses repeatedly evaluated the pulses in Mr. Clutter's left leg and found them to be "faint" and barely discernible by Doppler. This was also an indication that the graft had failed and needed to be fully evaluated and timely fixed.

16. Despite the signs that the graft had failed, Dr. Koslow discharged Mr. Clutter on December 5, 2015.

17. Mr. Clutter continued to have severe pain and immobility in his left leg. In fact, on February 3, 2016, the VA performed a vascular study of the left leg and found it to be indicative of a failed graft.

18. Despite this finding, the VA failed to refer Mr. Clutter to a vascular surgeon in a timely manner. It took months following the vascular study for Mr. Clutter to get into see a vascular surgeon.

19. By February 2016, Dr. Koslow and the VA had separated, and there was not a vascular surgeon at the VAMC in Columbia. On February 17, 2016, Mr. Clutter's primary care physician at the VA, Dr. Donny Peter, requested a consult with a Non-VA vascular surgeon.

20. On March 3, 2016, Dr. Peter noted that despite the concerning results of the vascular study and his February 17, 2016 request, the VA had still failed to schedule a vascular surgery consult for Mr. Clutter. Significantly, Dr. Peter noted that he was forwarding his March 3, 2016 note to his "Chief [o]f Primary Care, Dr. Sellers via encrypted email, to notify her of the situation".

21. On April 8, 2016, Mr. Clutter finally received an appointment with a vascular surgeon, but by the time Mr. Clutter could get further care for the failed graft, it was too late. Mr. Clutter had his left leg amputated in late August of 2016.

### Dr. Koslow, Questionable Surgeon

22. Unknown to Mr. Clutter, but well known to Dr. Koslow (and therefore by extension known to the VA), Dr. Koslow had signed an agreement with the Iowa Medical Board that acknowledged his incompetence, among other things. This agreement is attached to the Complaint as Exhibit 2.

23. Dr. Koslow was charged by the Iowa Medical Board with:

## COUNT I

11. **Professional Incompetency:** Respondent is charged with professional incompetency pursuant to Iowa Code sections 147.55(2), 148.6(2)(g) and (i), and 272C.10(2) and 653 IAC 23.1(2)(c), (d), (e), and (f), by demonstrating one or more of the following:

   c. A substantial lack of knowledge or ability to discharge professional obligations within the scope of the physician's or surgeon's practice;

   d. A substantial deviation from the standards of learning or skill ordinarily possessed and applied by other physicians or surgeons in the state of Iowa acting in the same or similar circumstances;

   e. A failure by a physician or surgeon to exercise in a substantial respect that degree of care which is ordinarily exercised by the average physician or surgeon in the state of Iowa acting in the same or similar circumstances; or

   f. A willful or repeated departure from, or the failure to conform to, the minimal standard of acceptable and prevailing practice of medicine and surgery in Iowa.

24. Notably, Dr. Koslow was specifically alleged to have been incompetent with regard to the treatment and management of peripheral vascular disease. Specifically, the Iowa Medical Board charged:

6

not up to date. His most significant weaknesses were in the area of peripheral artery disease, carotid endarterectomy and thoracic outlet syndrome. His clinical judgment and reasoning were inadequate including incomplete evaluations, treatment planning and inconsistent recognition of complications. His documentation in patient charts was inadequate and his communication skills were marginal with need for improvement.

25. Dr. Koslow agreed with the charges. In his settlement agreement, Dr. Koslow agreed to extensive supervision by the medical board, further education, and an inability to practice medicine without the supervision of a "practice monitor", a board-certified vascular or cardiothoracic surgeon, and a "worksite monitor", "a physician who regularly observes and/or supervises" Dr. Koslow and agrees "to inform the Board immediately if there is evidence of disruptive behavior or a violation of [the settlement agreement]". Dr. Koslow accepted the agreement and restrictions by his signature on November 25, 2015.

_____
Alan R. Koslow, M.D., Respondent

Subscribed and sworn to before me on 25 November, 2015.

Notary Public, State of South Carolina

7

26. The Iowa Medical Board formalized the agreement on December 11, 2015. Notably, Dr. Koslow operated on Mr. Clutter on December 3, 2015—more than a week after Dr. Koslow had agreed to the charges and sanctions against him. No one told any of this to Mr. Clutter.

27. The injuries to Mr. Clutter were the direct and proximate result of and were caused and occasioned by the negligence, carelessness, recklessness, willfulness, and wantonness on the part of Defendant, in failing to possess and exercise that degree of medical training, competency, and skill ordinarily and customarily possessed and exercised by physicians under similar circumstances. Defendant, through its agents and employees, rendered inappropriate medical care to Mr. Clutter by deviating from and falling below the prevailing and acceptable standards of care in one or more of the following particulars:

    a. Allowing Dr. Koslow to operate on or treat Mr. Clutter at all;

    b. In failing to inform Mr. Clutter of Dr. Koslow's incompetency and his charges and agreement with the Iowa Medical Board;

    c. In Dr. Koslow improperly performing the bypass;

    d. In Dr. Koslow improperly following-up on the signs and symptoms of a failed vascular bypass/failed graft;

    e. In Dr. Koslow's failure to insure the graft was open;

    f. In the delay in getting Mr. Clutter to see an alternative competent vascular surgeon, especially after the VA knew on February 3, 2016, that the bypass had failed; and

    g. In such other ways as may be shown at the trial of this case.

Attached as **Exhibit 1** to this Complaint is an affidavit from a qualified expert who will testify to one or more deviations from the standard of care.

## FOR A FIRST CAUSE OF ACTION

### (Personal Injury)

28. Plaintiffs reiterate paragraphs 1-27 above as if set forth verbatim herein.

29. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and departure from the professional standards of care by the Defendant United States' employee health care providers, Mr. Clutter suffered an injury to his left leg, which over time led to his having the left leg amputated. This led to Mr. Clutter's personal injury, disfigurement, conscious pain and suffering, medical expenses, mental anguish, loss of enjoyment of life, and other general, special, and consequential damages. All damages should be in an amount determined by a jury in this action.

## FOR A SECOND CAUSE OF ACTION

### (Loss of Consortium)

30. Plaintiffs reiterate paragraphs 1-29 above as if set forth verbatim herein.

31. Plaintiff Ann Marie Clutter has suffered a loss of consortium as a result of the actions and inactions of Defendant. She is therefore entitled to an award of damages to compensate her for her loss of the society, comfort, companionship, support, and good offices of her husband.

WHEREFORE, Plaintiffs respectfully pray for judgment against the Defendant for actual damages, special damages, consequential damages, and punitive damages in an amount to be

determined by the jury at the trial of this action, for the costs and disbursements of this action and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**MCGOWAN HOOD & FELDER, LLC**

**s/Chad McGowan**

_____
Chad A. McGowan, Fed. ID# 6620
McGowan, Hood, & Felder, LLC
1539 Healthcare Drive
Rock Hill, South Carolina 29730
(803) 327-7800
(803) 328-5656  Facsimile
cmcgowan@mcgowanhood.com

Attorney for Plaintiff

Rock Hill, South Carolina
August 10, 2017

10